René P. Voss (CA Bar No. 255758)
Natural Resources Law
15 Alderney Road
San Anselmo, CA 94960
(415) 446-9027 | renepvoss@gmail.com
LOCAL COUNSEL

Mike Sargetakis (OR Bar No. 174607)
(503) 233-8044 | mike@crag.org
Oliver J. H. Stiefel (OR Bar No. 135436)
(503) 227-2212 | oliver@crag.org
Crag Law Center
3141 E Burnside St,
Portland, OR 97214
LEAD COUNSEL
*Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAFE ALTERNATIVES FOR OUR FOREST ENVIRONMENT**, a California non-profit corporation; **KLAMATH FOREST ALLIANCE**, a California non-profit corporation; and **CONSERVATION CONGRESS**, a California non-profit corporation.<br><br>Plaintiffs,<br><br>v.<br><br>**RACHEL BIRKEY**, in her official capacity as Forest Supervisor of the Shasta-Trinity National Forest; and the **UNITED STATES FOREST SERVICE**,<br><br>Defendant. | No. 2:23-cv-01940-DJC-DMC<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE, AND PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANTS DECLARATION IN SUPPORT OF DEFENDANTS' OPPOSITION AND CROSS MOTION FOR SUMMARY JUDGMENT[DKT 25-2]**<br><br>Hearing Date: May 9, 2024<br>Hearing Time: 1:30 p.m,<br>Courtroom 10, 13th Floor<br>Before the Hon. Daniel J. Calabretta |

//

//

## INTRODUCTION

This Memorandum in Opposition to Defendants' Motion to Strike and Motion to Strike Defendants' Declaration of Keli McElroy presents two distinct fact patterns that together illustrate the difference between Plaintiffs' appropriate use of declarations to support Article III standing, as opposed to Defendants' Declaration brought solely to provide improper post-decisional and extra-record material to support arguments on the merits. On the one hand, Plaintiffs have properly filed three declarations in support of their Motion for Summary Judgment for the narrow and exclusive purpose of establishing standing—a routine part of Plaintiffs' duty to establish this Court's jurisdiction (unchallenged by Defendants). In the other instance, Defendants have provided a Declaration which presents extra-record material to address the merits of their arguments, in violation of the very principles complained about in Defendants' own Motion to Strike. Plaintiffs address both in turn.

## POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS MOTION TO STRIKE

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992) (citation omitted). Plaintiffs have offered three declarations—one from each Plaintiff—which provide facts for this Court to address the ordinary, required showing of standing, with facts describing injury, causation, and redressability. *See generally,* Dkts 23-3; 23-4; 23-5 (Baker Dec; Glass Dec; Boggs Dec). Plaintiffs' declarants provide details about prior and planned future use of the project area, and facts which detail the basis for and extent of their likely injuries from the failure to conduct sufficient analysis. *See id.* Plaintiffs' declarants are long-time residents of the area who have spent decades advocating on behalf of old-growth forests and the wildlife that rely on them. *See id.*

Defendants' complaints about these declarations boil down to two primary issues: First, Defendants complain that Plaintiffs have improperly "supplemented" the Administrative Record. Dkt 26-1 ("MTS") at 3–4. Second, Defendants complain that the declarations contain improper "expert testimony" and "incorrect" factual information. MTS at 4–5. Both of these complaints,

and the accompanying subordinate and/or alternate arguments, are not well taken. The purpose for which these declarations have been offered is narrowly tailored and complies with law allowing standing declarations or affidavits, separate and apart from any of the cases cited by Defendants. Plaintiffs have not improperly sought to supplement the Record or artificially stretch the length of their merits briefing. To accept Defendants' position would require the Court to find that the declarations have been offered for some purpose outside the narrow one of establishing standing, which is clearly not the case.

I.   **The Declarations Are Offered to Establish Article III Standing Only.**

"With a few exceptions. . . judicial review of agency action is limited to a review of the administrative record." *Friends of Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986). One of those exceptions, however, applies to extra-record materials submitted not to supplement the administrative record, but to demonstrate that a party has standing to seek relief in federal court. *NW Envtl. Def. Ctr.* ("*NEDC*") *v. Bonneville Power Admin.*, 117 F.3d 1520, 1527–28 (9th Cir. 1997) (supplemental affidavits to show standing permissible in NEPA cases). Because these declarations are offered for standing **only**, the four-part rule in *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) cited by Defendants does not apply. *Compare* Pls. MSJ Memo Dkt 23-1 at pp. 13–14 (discussing standing, citing decs) *with* Dkt 23-1 at pp. 1–12, 15–25 (discussing the merits of the case, with **no** citation to any of the complained-about declarations).

Defendants complain that Plaintiffs violated the agreed-upon schedule in this Court's scheduling order (Dkt 19) by failing to file a motion to supplement the Record, but "[b]ecause Article III's standing requirement does not apply to agency proceedings, petitioners had no reason to include facts sufficient to establish standing as a part of the administrative record. [Courts] therefore consider the affidavits **not in order to supplement the administrative record** on the merits, but rather to determine whether petitioners can satisfy a prerequisite to this court's jurisdiction." *NEDC,* 117 F.3d at 1528. (emphasis added). Said another way, these standing declarations do not exist in the administrative record, they exist in the docket and references to them in briefing merely exist to establish Plaintiffs' standing. Defendants ignore this dispositive issue.

## II. Facts Contained in Standing Declarations Are True For Their Narrow Purpose.

Defendants complain that Plaintiffs' declarations include "incorrect" facts, and "expert" opinions, but this is irrelevant, given the limited context for which these declarations are offered. Once more: Plaintiffs have not offered these Declarations for any purpose outside the narrow scope of establishing Article III Standing. *NEDC,* 117 F.3d at 1528. It is uncontroverted in the Ninth Circuit that "[w]here specific facts must be presented in the form of affidavits or other evidence to establish standing, the court will take these facts to be true for the purposes of a summary judgment motion." *Nat. Res. Def. Council, inc.* ("*NRDC*") *v. U.S. Forest Serv.*, 634 F.Supp.2d 1045, 1052–53 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 561); *Beck v. U.S. Dep't of Commerce*, 982 F.2d 1332, 1340 (9th Cir 1992)).

As a result—regardless of Defendants' insistence otherwise—the facts in these declarations are true for the narrow purpose for which they have actually been offered here. None of the cases cited by Defendants stand for a contrary position. Instead, Defendants cite case law that applies to a fundamentally different kind of situation, where a party attempts to bolster an administrative record with post-decisional information for use in favor of (or opposition to) the Decision itself. *See* MTS at 5–6. That plainly is not consistent with Plaintiffs' use of Declarations here, and no reasonable reading of the complained-about Declarations or Plaintiffs' Motion for Summary Judgment could lead to a different conclusion.

Defendants ask this Court to pick apart standing declarations, and fly-speck technical inaccuracies unimportant to lay people (or to the case itself). For example, Defendants contend that "Northern Spotted Owl is currently listed as 'threatened' and not 'endangered' under the Endangered Species Act." MTS at 3. But this distinction has no actual bearing on how the agencies manage owls, *see* AR2602 (take prohibition applies to threatened owls), and the Fish and Wildlife Service has expressly found that owls are warranted for uplisting but precluded because of higher priority actions—meaning that they are, functionally, "endangered." AR2545. For the purposes of regular people concerned about owls, the agencies charged with protecting owls, or this actual case, this is a technical distinction without a practical difference.

Other complaints include the definition of "steep slopes," MTS at 3 (dispute about

No.  2:23-cv-01940-DJC-DMC
MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE AND MOTION TO STRIKE – 3

whether or not the described slope is actually 40%); the visibility of the Project area from a nearby highway, and the names of forest roads, *Id.*; and lay interpretation of scientific studies on impacts to owls. MTS at 5.[1] But Defendants fail to situate such statements within the context for which they are offered; Defendants have simply argued straight past Plaintiffs' clear and exclusive purpose for filing these declarations. The substance of the declarations goes to each of the prongs of standing—namely injury, causation, and redressability—which, once again, was not challenged by Defendants, and is not at issue before this Court.

      Defendants sole support for the arguments as to the "correctness" or "accuracy" of the complained about issues is their own, extra-record declaration. MTS at 2–4 (citing McElroy Decl.). But Defendants have offered no basis for this Court to probe the veracity of the statements in that declaration, either. Regardless, this Court need not wade into this unnecessary back-and-forth and can simply focus on the *use* of the Declarations. Indeed, as noted *supra*, the appropriateness of these declarations under the law as discussed in this memo is further evidenced by Plaintiffs' use of these declarations *only* in support of standing, consistent with *NEDC*, *Lujan*, and others. And because they have been offered for that narrow purpose, the facts in these declarations are true under the law. *NRDC,* 634 F. Supp. 2d at 1052–53. It is simply not an appropriate role for Defendants to police which specific assertions in standing declarations they self-servingly deem to "concern . . . standing." MTS at 7. This is especially true where, as here, Plaintiffs have not offered the declarations for any purpose other than standing, and Defendants have not contested standing. For the foregoing reasons, this Court should deny Defendants' Motion to Strike portions of Plaintiffs' Declarations.

**POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION TO STRIKE**

      Defendants have offered a declaration from Keli McElroy, U.S. Forest Service staff member, in support of their Motion for Summary Judgment. Dkt 25-2 ("McElroy Declaration"). This Declaration presents improper argumentative rebuttal to Plaintiffs' standing declarations,

---

[1] Because Defendants' objections fail as to the threshold matter discussed above, Plaintiffs will not waste scarce judicial resources on a line-by-line rebuttal to each objection. These examples are simply illustrative of the "form over substance" nature of the objections.

and post-decisional, extra-record information that cannot be used to bolster the Decision, and therefore, should be stricken.

## BACKGROUND

### I. Judicial Review of Final Agency Actions Under the APA are Limited to Record.

As noted, "[w]ith a few exceptions. . . judicial review of agency action is limited to a review of the administrative record." *Friends of Earth v. Hintz*, 800 F.2d at 828. "In general, a court reviewing an agency action under the APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). A Court's "[r]eview of the reasonableness of an agency's consideration of environmental factors is limited. . . by the time at which the decision was made." *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 983 (9th Cir. 1985). Post-decision information "may not be advanced as a new rationalization either for sustaining or attacking an agency's decision." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (citation omitted).

### II. Exceptions to "Record Review"

The Ninth Circuit has recognized four narrow exceptions for expanding review of the merits of an APA case beyond the administrative record. *Animal Def. Council*, 840 F.2d at 1436. The Court may look outside the record: 1) when necessary to explain the agency's action; 2) when it appears the agency relied on materials or documents it omitted from the record; 3) when necessary to explain technical terms or complex subject matter involved in the agency action, or 4) when there is a strong showing of bad faith on the part of the agency. *Id.* at 1436–37 (citation omitted). None of these exceptions allow for post-decisional information not considered by the Agency in rendering its Decision to be included in the Record. *Tri-Valley CAREs v. United States DOE*, 671 F3d 1113, 1130 (9th Cir 2012). "When there is a need to supplement the record to explain agency action, the preferred procedure is to remand to the agency[.]" *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982). Because Defendants seek to expand the

administrative record, they bear the burden of demonstrating compliance with one of those four exceptions. They have not done so.[2]

**ARGUMENT**

Defendants cite the McElroy Declaration throughout their brief to assert facts that go beyond the Decision in time and scope. *See, e.g.*, Dkt 25-1 at pp. 6, 8, 12, 16. For the reasons set forth in Plaintiffs' concurrently-filed Memorandum in Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment, this is improper, and if not stricken, the McElroy Declaration should at the very least be disregarded by this Court. This kind of post-hoc rationalization "serve[s] only to underscore the absence of an adequate explanation in the administrative record itself." *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1049 (9th Cir. 2010).

The McElroy Declaration contains 27 paragraphs. Paragraphs 1–5 introduce the declarant, and may be proper but have no bearing on the case at hand. Paragraphs 6–16 provide rebuttal to Plaintiffs' Declarations, which is irrelevant for the reasons described *supra*. Paragraphs 17–27 are under the heading "implementation of the McFarland Project," and describe post-decision facts that cannot be used to judge the wisdom or correctness of the Decision. *Sw. Ctr.*, 100 F.3d at 1450. Defendants may argue that these post-Decision facts are relevant to Plaintiffs' Significant New Information claim. Dkt 23-1 (Pls. MSJ) at 22–24. But the Defendants use the McElroy Declaration more broadly. *See, e.g.*, Dkt. 25-1 at 16 (citing the Declaration in support of their "extraordinary circumstances" argument, and not in support of the Significant New Information argument).[3]

Rather than moving to supplement the record, Defendants in their Opening/Response Brief cite a District Court opinion from the Western District of Washington in a footnote

---

[2] Ironically, Defendants fault Plaintiffs for not moving to supplement the record (which, as discussed above, is unnecessary for standing declarations), but then have failed to file such a motion themselves for a declaration used for merits purposes.

[3] Because Defendants have not moved to supplement the record, the specific purposes for which the McElroy Declaration are being offered, and the purported exception(s) which the Declaration fits, under are not clear. Plaintiffs reserve the right to file a reply in support of this motion to strike if Defendants offer new arguments and rationalizations to justify the propriety of the Declaration. *Cf. Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

No.  2:23-cv-01940-DJC-DMC
MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE AND MOTION TO STRIKE – 6

regarding the use of post-decisional information, a case which describes a purported exception allowing a post-decisional declaration that "demonstrates compliance with forest plan standards." Dkt 25-1 at 7 n.3 (citing *Forest Service Employees for Envtl. Ethics v. U.S. Forest Serv.*, Case No. 3:17-cv-5747-RBL, 2019 WL 280001, 2019 U.S. Dist. LEXIS 10139 at *3 (W.D. Wash Jan. 22, 2019)). In that case, the Court ordered supplemental briefing to answer whether the Forest Service's violations of the law were harmless error, and if not, what the appropriate remedy would be. *Id.* at *1–2. The purposes for these declarations were narrowly tailored to a specific set of supplemental briefing requested by the Court, and allowed as a result of "unusual procedural posture." *Id.* at *8.

Critical to this decision was that the declarations in that case described **pre-decisional** events that were missing from the administrative record. *Id.* at *10. The Court also made the requisite finding that there was no "substantial basis" to conclude that the declarations in that case were mere after-the-fact rationalization. *Id.* at *9. Another crucial distinction is that courts are not bound to the administrative record when contemplating remedy, as they were in *Forest Service Employees*. *See, e.g.*, *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833–34 (9th Cir. 2002) (reviewing declaration testimony filed to inform permanent injunction); *Leboeuf, Lamb, Greene & Macrae, LLP v. Abraham*, 215 F. Supp. 2d 73, 82 (D.D.C. 2002) (extra-record evidence allowed in cases where relief is at issue) (citing *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)).

To the extent Defendants rely on *Forest Service Employees* for the proposition that this Declaration is proper, they are incorrect because this case is easily distinguishable. The McElroy Declaration is not offered to support any notion of appropriate remedy. *See* Dkt. 25-1 at 25 (remedy section, not citing the McElroy Declaration). Instead, the McElroy Declaration is offered for two purposes. First, to rebut facts that are true under the law; and second, to describe post-Decision facts which had no bearing on the Decision that was made, or its underlying analysis. Neither purpose is proper.

As Defendants note in their own Motion to Strike, "[c]ommon sense dictates that the agency determines what constitutes the 'whole' administrative record." *California v. U.S. Dep't*

*of Labor*, No. 2:13-CV-02069-KJM-DAD, 2014 WL 1665290, at *4 (E.D. Cal. Apr. 24, 2014); *see also,* MTS at 5–6 (Def. Mot. to Strike). The administrative record in this case was filed (by Defendants) on January 1, 2024, Dkt 21, and the challenged Decision signed on October 28, 2022. The McElroy Declaration is signed March 4, 2024. Dkt. 25-2 at 7. Again, as Defendants are well aware, this Court's task "is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also* MTS at 5.

Defendants have made no effort to fit the McElroy Declaration under any of the *Animal Defense Council* exceptions, or any other exception that would allow its addition to the administrative record. More importantly, Defendants' use of the Declaration in their briefing is plainly inconsistent with the bar on post-decisional information. *Tri-Valley CAREs*, 671 F.3d at 1130. The declaration of Keli McElroy should be stricken.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendants' Motion to Strike, and grant Plaintiffs' Motion to Strike.

Respectfully submitted this 22nd day of March, 2024.

s/ Mike Sargetakis
Mike Sargetakis (OSB No. 174607, *pro hac vice*)
(503) 233-8044 | mike@crag.org
Oliver J. H. Stiefel (OSB No. 135436, *pro hac vice*)
(503) 227-2212 | oliver@crag.org
Crag Law Center
3141 E Burnside Street
Portland, Oregon 97214
Fax: (503) 296-5454
LEAD COUNSEL

*Of Attorneys for Plaintiffs*